IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>vs.<br><br>WILSON LUCAS SALES DBA MIRACLE SIDING; MIRACLE SIDING, LLC; J. RUTLEDGE YOUNG, III, as Receiver for WILSON LUCAS SALES DBA MIRACLE SIDING, LLC; COMPLETE BUILDING CORPORATION, INC.; TRI-COUNTY ROOFING, INC.; PALMETTO POINTE AT PEAS ISLAND CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC. AND JACK LOVE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>DEFENDANTS. | 2:19-cv-01083-DCN<br><br>COMPLAINT<br><br>(Declaratory Judgment)<br><br>(Non-Jury) |

Plaintiff Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, complaining of the above-named defendants, Wilson Lucas Sales DBA Miracle Siding and Miracle Siding, LLC ("Miracle Siding"), J. Rutledge Young, III, as Receiver for Wilson Lucas Sales DBA Miracle Siding, LLC ("the Receiver"), Complete Building Corporation, Inc. ("CBC"), and Tri-County Roofing, Inc. ("Tri-County"), and also Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. ("the Association") and Jack Love, individually, and on behalf of all others similarly situated ("Love," collectively "Underlying Plaintiffs"), respectfully alleges and would show as follows:

**NATURE OF ACTION**

1.      This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, there is a

real and justiciable controversy between the parties, the parties are interested parties, and Nautilus asks the Court to declare the rights and obligations of the parties.

2. The Court's declaration will confer certainty on the parties and serve the interests of justice.

## PARTIES

3. Nautilus is an insurance company organized and existing under the laws of the state of Arizona, with its principal place of business in Scottsdale, Arizona. Nautilus issues insurance policies in South Carolina and insures property and interests located within South Carolina.

4. Upon information and belief, Miracle Siding previously operated as a sole proprietorship and is now a dissolved limited liability company that was organized under the laws of the state of South Carolina with one member, Wilson Lucas Sales, who is an individual and is a resident of South Carolina, and had its former principal place of business in Charleston, South Carolina. By Order Appointing Receiver filed September 25, 2018, Miracle Siding was placed into receivership.

5. Upon information and belief, CBC is an administratively dissolved corporation that was organized under the laws of the state of South Carolina with its principal place of business in Charleston, South Carolina.

6. Upon information and belief, Tri-County is a corporation organized and existing under the laws of the state of South Carolina with its principal place of business in Ladson, South Carolina.

7. Upon information and belief, the Association is a non-profit corporation organized and existing under the laws of the state of South Carolina.

8. Upon information and belief, Love is an individual and is a citizen of the state of South Carolina and resides in Charleston, South Carolina.

9. Jurisdiction exists because there is complete diversity of citizenship between Nautilus and the Defendants, and the amount in controversy, including the potential costs of indemnifying Miracle Siding in the underlying dispute, potentially exceeds $75,000.00. This Court thus has jurisdiction based upon 28 U.S.C. § 1332(a).

10. Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court interpreting the terms of insurance policies issued to Miracle Siding as an insured with regard to the business located in Charleston County, South Carolina and work performed in Charleston County, South Carolina.

## FACTUAL BACKGROUND

**A.     Underlying Lawsuit**

11. This declaratory judgment action arises out of claims regarding alleged construction defects specifically related to and arising out of the performance of certain construction work by Miracle Siding.

12. On February 13, 2015, Underlying Plaintiffs filed a Complaint in the Court of Common Pleas for Charleston County, South Carolina, Case No. 2015-CP-10-0955. Since that time on November 2, 2017, Underlying Plaintiffs filed their Second Amended Complaint, captioned *Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love, Individually, and on Behalf of All Others Similarly Situated v. Island Pointe, LLC, et al.* ("Palmetto Pointe Lawsuit"). A true and correct copy of the Second Amended Complaint is attached as **Exhibit A**, the allegations of which are incorporated here by reference.

13. Miracle Siding was brought into the Palmetto Pointe Lawsuit as a party by the Third-Party Complaint filed by Tri-County on April 22, 2015. Since that time, Plaintiffs have named Miracle Siding as a direct defendant and Tri-County filed a crossclaim against Miracle Siding for negligence, breach of express and implied warranties, breach of contract, and indemnity.

14. CBC has also filed a crossclaim against Miracle Siding for negligence, breach of warranty, and indemnity.

15. According to the Second Amended Complaint, the Palmetto Pointe Lawsuit involves claims arising out of the alleged defective construction of a condominium project originally consisting of forty (40) townhouse style condominiums located in twenty (20) buildings and related common elements and a clubhouse ("Palmetto Pointe" or "the Project") in Charleston, South Carolina.

16. According to the Second Amended Complaint, CBC was engaged in the business of designing and constructing the condominiums at Palmetto Pointe.

17. Per the Second Amended Complaint, Tri-County supplied materials and roofing and related materials, among other work, and supplied siding, flashing, deck waterproofing, gutters, and other materials at Palmetto Pointe.

18. According to the Second Amended Complaint, Miracle Siding supplied materials and installed siding, flashing, and related components, among other work at Palmetto Pointe.

19. In the Second Amended Complaint, Underlying Plaintiffs contend that at the time the Certificates of Occupancy were issued, Palmetto Pointe contained latent building defects and preliminary reports show defects in the construction of the Project and damages such that

Miracle Siding, and the other named defendants, are liable to the Underlying Plaintiffs under causes of action for negligence/gross negligence and breach of warranty.

20. Underlying Plaintiffs allege they are entitled to recover damages, including actual, consequential, and punitive damages.

21. Nautilus is currently defending Miracle Siding under a full reservation of rights.

**B.  The Policies**

22. In 2004, Nautilus first issued a commercial general liability policy, policy number NC327400, to Miracle Siding for the policy period beginning February 16, 2004 to February 16, 2005. Nautilus then issued policy number NC4131811 to Miracle Siding for the February 16, 2005 to February 16, 2006 policy period. Next, policy number NC502998 was issued to Miracle Siding for the February 16, 2006 to February 16, 2007 policy period. Finally, Nautilus issued policy number NC625891 to Miracle Siding for the February 16, 2007 to February 16, 2008 policy period, and this policy was cancelled effective July 15, 2007. True and correct copies of the policies are attached as **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**, the terms and conditions of which are incorporated herein by reference.

23. The policies issued by Nautilus are commercial general liability policies of insurance. The policies, pursuant to their respective Declarations, provide for the following limits of liability: $1,000,000 per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate and have a $500 deductible per claim for property damage.

24. A justiciable controversy exists between the parties in this action concerning whether and to what extent coverage exists under the policies for the damages as alleged in the Palmetto Pointe Lawsuit.

25. Nautilus is entitled to a judicial declaration that the policies issued to Miracle Siding do not provide coverage for some or all of the damages alleged in the Palmetto Pointe Lawsuit, and therefore, Nautilus has no duty to indemnify Miracle Siding for some or all of the damages alleged in connection with the Palmetto Pointe Lawsuit.

### FOR A FIRST DECLARATION
### (Lack of "Property Damage" or "Occurrence")

26. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

27. The policies, pursuant to their insuring agreement, provide coverage, subject to any applicable exclusion(s), for "'property damage' … caused by an 'occurrence' … during the policy period."

28. The policies, as set forth more specifically therein, define "property damage" in relevant part to mean "physical injury to tangible property, including all resulting loss of use of that property…or loss of use of tangible property that is not physically injured."

29. The policies, as set forth more specifically therein, also define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30. Under the terms and conditions of the policies, Nautilus contends and would show that some or all of the allegations raised in the Palmetto Pointe Lawsuit do not constitute "property damage" or an "occurrence" as defined by the policies.

31. Accordingly, Nautilus seeks a declaration from this Court that it has no o r limited indemnification obligations under the policies in connection with the claims alleged in the Palmetto Pointe Lawsuit because the claims do not constitute "property damage" or an "occurrence" as defined by the policies.

32. Further, Nautilus seeks a declaration from this Court that it has no indemnification or limited obligations under the policies in connection with the claims alleged in the Palmetto Pointe Lawsuit because the claimed property damage did not occur during the policy period.

## FOR A SECOND DECLARATION
### ("Exclusion – Punitive or Exemplary Damages" Endorsement)

33. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

34. The policies issued for the 2004 to 2007 policy periods include an endorsement entitled "Additional Exclusions and Conditions." The endorsement, provided under Form S051 (09/03), provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> ****
>
> **EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**
>
> The following is **added** to EXCLUSIONS:
>
>> This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.
>
> ****

35. The policy issued for the 2007 to 2008 policy period includes an endorsement entitled "Exclusion – Punitive or Exemplary Damages." The endorsement, provided under Form S017 (01/98), provides:

> This endorsement modifies insurance provided under the following:

7

BUSINESSOWNERS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
PART

The following is **added** to EXCLUSIONS:

> This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

All other Terms and Conditions of this Policy remain unchanged.

36. Per the Second Amended Complaint, Underlying Plaintiffs seek to recover punitive damages.

37. Accordingly, Nautilus seeks a declaration from this Court that the policies do not afford coverage for any allegations of entitlement to punitive damages, and likewise any award of punitive damages, in the Palmetto Pointe Lawsuit.

**FOR A THIRD DECLARATION**
**(Standard Policy Exclusions)**

38. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

39. Section I—Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of both of the policies contains certain standard policy exclusions, namely: "c. Contractual Liability," "j. Damage to Property," "k. Damage To Your Product," and "l. Damage To Your Work."

40. The policies provide, in relevant part, as follows:

**2.** Exclusions

This insurance does not apply to:

\*\*\*\*

**b.** Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the costs of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*\*

**j.** Damage To Property

"Property damage" to:

\*\*\*\*

9

   **(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   **(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

****

Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

****

 **k.** Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

 **l.** Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

****

  41. The above-referenced policy exclusions provide that coverage is not available under the policies to the extent that the damages at issue in the Palmetto Pointe Lawsuit fall within any of these exclusions. Accordingly, the policies afford no coverage for the damages alleged in the Palmetto Pointe Lawsuit, and Nautilus does not owe a duty to indemnify.

**WHEREFORE,** Nautilus prays that the Court enter an Order declaring the rights of the parties as follows:

a.  The policies issued by Nautilus to Miracle Siding do not provide coverage for and/or exclude from coverage the claims asserted in connection with the Palmetto Pointe Lawsuit;

b.  Nautilus has no duty to indemnify in connection with the claims asserted in the Palmetto Pointe Lawsuit; or in the alternative,

c.  The policies provide coverage for only some and/or exclude from coverage some of the claims asserted/damages alleged in the Palmetto Pointe Lawsuit; and

d.  Further, Nautilus prays that the Court award the costs of the action and any such other and further relief as this Court shall deem just and proper.

GALLIVAN, WHITE & BOYD, P.A.

By: _s/ Janice Holmes_
Janice Holmes (11366)
Shelley S. Montague (07587)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
Telephone: 803-779-1833
Facsimile: 803-779-1767
jholmes@GWBlawfirm.com
smontague@GWBlawfirm.com

Attorneys for Nautilus Insurance Company

Columbia, South Carolina
April 12, 2019